UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| ERICA KERSHAW,<br><br>    Plaintiff,<br><br>V.<br><br>JOHNSTON HEALTH ENTERPRISES, INC.,<br><br>    Defendant. | CIVIL ACTION FILE NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff, Eric Kershaw ("Plaintiff" or "Ms. Kershaw"), by and through undersigned counsel, The Kirby G. Smith Law Firm, LLC, and hereby files this Complaint against the Defendant Johnston Health Enterprises, Inc., ("Defendant" or "Johnston"), stating as follows:

### I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Counts I-III of this Complaint, which arise out of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA).

2. This Court has jurisdiction over the parties of this action because the employment practices described herein took place in Johnston County, North Carolina.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

4. Plaintiff received her Notice of Right to Sue from the Equal Employment and Opportunity Commission (EEOC) and files this Complaint within the ninety (90) days prescribed.

## II. PARTIES

5. Plaintiff is a citizen of the United States and a resident of North Carolina.

6. Defendant is a corporation registered to conduct business in the State of North Carolina.

7. Defendant may be served through its Registered Agency, Charles W. Elliott, Jr., located at 509 North Brightleaf Boulevard, Smithfield, NC 27577.

8. Defendant employed fifteen (15) employees or more at all times relevant to this matter.

9. Defendant is subject to the requirements of the ADA.

## III. FACTUAL ALLEGATIONS

10. Plaintiff began working for Defendant in September 2018.

11. At all times relevant to this matter, Plaintiff worked for Defendant as a Clinical Coordinator and Registered Nurse (RN).

12. Plaintiff suffers from major depressive disorder ("depression") and generalized anxiety disorder ("anxiety") (collectively, the "disabilities").

13. When Plaintiff's depression and anxiety symptoms are active, she is substantially limited in her ability to interact with others, think, and work.

14. On or around September 20, 2019, Plaintiff's doctor recommended that she undergo Transmagnetic Stimulation (TMS) therapy to treat her depression.

15. Beginning September 24, 2019, Plaintiff went on continuous FMLA leave so she could attend daily TMS treatments.

16. Her return to work date was December 17, 2019.

17. On November 13, 2019, Plaintiff met with Ms. Alicia Van Camp and Ms. Tammy Wood, Human Resources (HR) representatives for Defendant, to discuss potential accommodations to Plaintiff's work responsibilities.

18. As a Clinical Coordinator, Plaintiff was responsible for two separate locations operated by Defendant.

19. Out of the four (4) Clinical Coordinators working for Defendant under the same supervisor as Plaintiff, only Plaintiff was assigned coordinating duties for two different locations.

20. Plaintiff's physician recommended that she only work at one (1) location and limit her work week to 4 day to better manage her disabilities.

21. During the November 13 meeting, Plaintiff shared her requested accommodations with Ms. Van Camp and Ms. Wood.

22. On December 5, 2019, Ms. Wood sent an email denying Plaintiff's accommodation requests.

23. After Plaintiff learned that her accommodations were denied, she requested an additional 2 weeks of unpaid leave to finish her TMS treatments.

24. The unpaid leave would have begun after Plaintiff exhausted her FMLA leave on December 17, 2019, and it would have continued through December 31, 2019.

25. Ms. Wood denied this request and demanded that Plaintiff return on December 17, 2019.

26. Ms. Wood told Plaintiff that she could work as a per diem nurse (PRN) instead of working as a Clinical Coordinator.

27. If Plaintiff accepted Ms. Wood's offer to work as a PRN, she would have lost her benefits and would not have been guaranteed work hours.

28. PRNs also need to be on-call, which would negatively affect Plaintiff's disabilities.

29. Neither Ms. Wood nor anyone else acting on behalf of Defendant offered Plaintiff anything other than the opportunity to transition to a PRN role.

30. Despite Defendant's denials of Plaintiff's accommodation requests, she was cleared to return to work as a Clinical Coordinator and RN.

31. Plaintiff returned to work on December 17, 2019.

32. On December 18, 2019, Plaintiff accidentally bumped a car in the parking lot.

33. Later that day, Ms. Van Camp made Plaintiff take a drug test.

34. After the drug screen, Plaintiff met with Ms. Van Camp, Ms. Wood, and Mr. Robert Cupp, Administrative Director of HR.

35. During the meeting, Plaintiff was told that Defendant believed she came back to work too soon.

36. Defendant then sent Plaintiff home and did not permit her to return.

37. The drug test was negative.

38. On December 26, 2019, Defendant posted Plaintiff's position online.

39. At no point did anyone acting on behalf of Defendant contact Plaintiff to inform her that she could return to work.

## IV. CLAIM FOR RELIEF

### COUNT I

### ADA DISCRIMINATION

40. Plaintiff incorporates by reference paragraphs 1-39 of her Complaint as if fully set forth herein.

41. Plaintiff has disabilities as defined by the ADA.

42. Defendant also regarded Plaintiff as disabled.

43. Defendant had notice of Plaintiff's disabilities.

44. Defendant constructively terminated Plaintiff on December 19, 2019, which constitutes

an adverse action.

45. The circumstances of Plaintiff's termination serve as evidence that the adverse action was discriminatory on the basis of Plaintiff's disabilities.

## COUNT II

## ADA RETALIATION

46. Plaintiff incorporates by reference paragraphs 1-39 of her Complaint as if fully set forth herein.

47. Plaintiff engaged in protected activity under the ADA when took leave for her disabilities and when she requested accommodations for her disabilities.

48. Defendant terminated Plaintiff.

49. The temporal proximity between Plaintiff's protected activity and her termination supports an inference of causation.

## COUNT III

## ADA FAILURE TO ACCOMMODATE

50. Plaintiff incorporates by reference paragraphs 1-39 of her Complaint as if fully set forth herein.

51. Plaintiff has disabilities as defined by the ADA.

52. Defendant had notice of Plaintiff's disabilities.

53. The reasonable accommodations of unpaid time off and modification of her job duties would have assisted Plaintiff in performing the essential functions of her position without exacerbating the symptoms of her disabilities.

54. Defendant denied Plaintiff's request and refused to engage in the interactive process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

a. Trial by jury;

b. A finding that Defendant violated Plaintiff's rights as set forth herein;

c. Full back pay plus interest, front pay, compensatory damages, punitive damages, reasonable attorney fees, and costs in accordance with the ADA; and

d. Any other relief this Court deems proper and just.

Respectfully submitted this 9th day of November, 2021.

THE KIRBY G. SMITH LAW FIRM, LLC


/s/Alexander C. Kelly
Alexander C. Kelly
North Carolina Bar No. 49308
*Attorney for Plaintiff*

THE KIRBY G. SMITH LAW FIRM, LLC
111 N. Chestnut St.
Suite 200
Winston-Salem, NC 27101
T: (704) 729-4287
F: (877) 352-6253
ack@kirbygsmith.com

**JURY DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 9th day of November, 2021.

                                        THE KIRBY G. SMITH LAW FIRM, LLC

                                        /s/Alexander C. Kelly
                                        Alexander C. Kelly
                                        North Carolina Bar No. 49308
                                        *Attorney for Plaintiff*

THE KIRBY G. SMITH LAW FIRM, LLC
111 N. Chestnut St.
Suite 200
Winston-Salem, NC 27101
T: (704) 729-4287
F: (877) 352-6253
ack@kirbygsmith.com